IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIE H. WILLIAMS,

      Petitioner,                    No. CIV S-05-1222 GEB GGH P

    vs.

DIRECTOR OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,

      Respondent.                  FINDINGS AND RECOMMENDATIONS

_____/

*Introduction and Summary*

        The issues in this pro se habeas case are difficult to decipher. With the exception of the Superior Court, no breakout of the issues was made by the state courts on habeas review. The problem is, however, that the claims in the habeas petition became more ambiguous with respect to the issues as they were filed in the appellate courts. After determining the issues below as best as possible, the court finds the petition has no merit and should be denied.

*Facts*

        The facts set forth by the California Court of Appeal are found by the undersigned to be accurate, and are not contested by petitioner insofar as they simply relate the facts presented at trial:

1

Following a jury trial, defendant Willie Henry Williams was convicted of assault with a deadly weapon. In a bifurcated proceeding, the court found that he had previously been convicted of assault with a deadly weapon, which constituted a prior serious felony (§ 667, subd. (a)), a prior strike conviction (§§ 667, subds.(b)-(i), 1170.12), and a prior felony prison term (§ 667.5, subd. (b)). Defendant was sentenced to an aggregate term of 11 years in state prison.

****

Defendant and David Latham, the victim, met each other when they were both in custody. On January 5, 2001, Latham ran into defendant in front of an apartment building, and defendant told him where he could buy some rock cocaine. After Latham had purchased some rock cocaine, the pair went to the home of defendant's ex-girlfriend, Bonnie Parker, on W Street to smoke it.

After smoking the cocaine, they bought alcohol and returned to Parker's. The three drank and talked. Latham discussed renting a room in Parker's house. Parker left, and told Latham he could stay and sleep at the house. After Parker left, defendant's demeanor changed. He grabbed Latham's head and told him to leave. Latham knocked defendant's hand away. A couple of minutes later, defendant came back toward Latham and stabbed him twice in the chest. Latham ran into a closet, grabbed some clothes to use as a shield, pushed defendant back and ran out the front door.

Latham headed toward Broadway, where a passerby noticed he was bleeding and called 911. When emergency personnel arrived, Latham told them he had been stabbed. He gave defendant's physical description and nickname, "Bushwhacker." He also indicated he had been stabbed near a garage by an alley near W Street. Although defendant and Latham were acquainted, apparently Latham did not know defendant's given name, only his nickname.

After being examined at the emergency room, Latham again told police that he knew the man who had stabbed him as "Bushwhacker," that he had been stabbed inside a residence on W Street and that he had smoked rock cocaine with the man who had stabbed him.

Other officers went to the alley Latham described and were questioning people in the area when they saw defendant in Parker's yard peering around the building at them. They asked defendant if he knew "Bushwhacker" and he confirmed he was "Bushwhacker." After defendant was handcuffed, one of the officers walked into the yard and immediately located a knife on the ground. Defendant was taken to the emergency room where Latham was being treated, and Latham immediately identified defendant as the person who had stabbed him.

In 1992, Latham was convicted of three felonies-assault, robbery, and burglary. Shortly before trial, Latham spoke with the prosecutor, Laura West, and a District Attorney's Office investigator, Joe Juarez. Latham told West and Juarez that he had gone to Parker's house alone to ask about renting a room, and defendant was already there. He also indicated he had never spoken with defendant before the day of the attack and did not know whether he and defendant had used cocaine that day. At trial, Latham explained this discrepancy by stating that he had not

wanted to discuss the drugs with the prosecutor and did not feel the facts were necessary. Latham also admitted the main reason he went to Parker's house was to smoke cocaine, not to rent a room.

Parker testified that she and defendant were living together and were dating when the stabbing occurred. She stated that on January 5, 2001, a man came by her house with a woman to ask about renting a room. They discussed some details and about 15 minutes later the pair left. Parker left the house close to midnight. When she left, defendant was eating spaghetti with her cousin Pam and Pam's husband, John. She returned from the store about 10 minutes later, and the police arrived shortly thereafter. Parker's testimony was impeached by her denial of prior criminal charges.

There were discrepancies between Parker's testimony and her previous statements to a defense investigator. She told the defense investigator she and defendant had been home alone together all day on January 5, 2001. She did not mention Pam or John being in the house with defendant at any time during the day, nor did she mention that Latham had brought anyone with him when inquiring about renting the room.

Defendant denied knowing Latham prior to the night of the stabbing and could not even recall ever having seen Latham before that night. Defendant testified that Latham came by Parker's house with a prostitute and Latham asked defendant if he could rent a room for a few minutes to have sex with the prostitute. Latham and defendant then smoked some rock cocaine together. Latham paid Parker $20 for the use of the house, and defendant and Parker left to get some beer and whiskey. About 15 minutes later, Latham and the woman left. He did not see Latham again that day. Defendant had three prior felony convictions. In 1959, he was convicted of felony grand theft, in 1992 of sales of narcotics, and in 1996 he was convicted of another felony involving moral turpitude.

People v. Williams, 2003 WL 22229554 (Cal. App. 2003).

*Issues*

Respondent utilized the habeas petition filed in the Superior Court as the template for the issues presented to the California Supreme Court and in this court. However, a review of the admittedly difficult-to-decipher petition in this case (a carbon copy of what was presented to the California Supreme Court) demonstrates that the issues presented herein were somewhat truncated from those presented to the Superior Court. The undersigned will not expand the petition to include those issues not raised by the petition herein, and explains the procedural history in this case with respect to issues raised and when.

\\\\\

On direct appeal to the California Court of Appeal, the only issues raised concerned the sufficiency of the evidence with respect to the victim/witness Latham. Petitioner claimed that Latham was so impeached on certain matters that this whole testimony should be disregarded. The Court of Appeal disagreed. On petition for direct review to the state supreme court, petitioner raised a state law issue only – that the Court of Appeal opinion failed to take into account the entire record and thus violated the state case of People v. Johnson, 26 Cal. 3d 557, 162 Cal. Rptr. 431 (1980). (Lodged Document No. 5). No federal issue whatsoever was presented in any sense that it could be said to be exhausted.

In the Superior Court, petitioner raised the issues of: (1) ineffective assistance of counsel (IAC) with respect to contacting alibi witnesses, (2) IAC regarding failing to inform petitioner he was to appear in court on a specified day, (3) IAC regarding conflicting advice about state speedy trial law; (4) court and counsel having discussions about speedy trial,(5) IAC regarding admission of counsel that the victim and petitioner knew each other;(6) IAC regarding defense counsel's telling the jury that petitioner was a "three time loser," (7) conflict of interest in defense counsel having been acquainted with the prosecution investigator in high school, (8) another attorney from the public defender's office stood in for trial counsel when the verdict was rendered, (9) IAC re argument that "petitioner's record of parole was insignificant," (10) trial court abused its discretion in permitting conflicting evidence about the knife used in the attack, (11) the trial court erred in using an unspecified enhancement because of conflicting evidence of petitioner's performance on parole, (11) trial court error in that the court knew about petitioner's prior strike case, (12) prosecutorial misconduct in failing to disclose the victim's "recantation" of testimony (which really was not a recantation). See Lodged Document No. 8, Superior Court Order.[1]

\\\\\

---

[1] Henceforth, the undersigned will refer only to the "Superior Court Order."

4

However, in the state Supreme Court, and in this court, liberally construed, petitioner complains only of:

(1) ineffective assistance of counsel (IAC) in failing to contact alibi witnesses so as to be prepared for trial before expiration of the time mandated by state speedy trial law;

(2) failure to tell petitioner about a failure to appear bench warrant;

(3) IAC re compliance with state speedy trial laws;

(4) various aspects of violation of state speedy trial laws;

(5) statement to the effect that IAC was committed when defense counsel told the judge that petitioner knew the victim;

(6) reference to the jury that petitioner was a "three time loser";

(7) trial counsel's acquaintance with the prosecutor's investigator;

(8) conflict of interest by having another attorney fill in for trial counsel when the verdict was read;

(9) IAC during sentencing by referencing petitioner's "insignificant record on parole."

Thus, the issues to be adjudicated herein are those issues which were presented to the California Supreme Court, and this court.

*Discussion*

    I. <u>Legal Standards</u>

        A. **Look-Through Doctrine**

The nine issues referenced above in the federal petition, assuming for the moment that federal constitutional law was implicated, were all decided in on way or another by the Sacramento Superior Court. These claims were presented to the state supreme court which issued a silent denial on them on the merits. The reasons expressed by the Superior Court are thus imputed to the state supreme court to the extent that the state court spoke to the constitutional issue. <u>Medley v. Runnels</u>, 506 F.3d 857, 862 (9th Cir. 2007) (en banc).

\\\\\

B. **AEDPA Deference**

The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 10, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

### C. Ineffective Assistance of Counsel

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688, 104 S. Ct. at 2065. To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690, 104 S. Ct. at 2066. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id., 104 S. Ct. at 2066. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d

695, 702 (9th Cir. 1990) (citing <u>Strickland</u> at 466 U.S. at 689, 104 S. Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice. <u>Strickland</u>, 466 U.S. at 693, 104 S. Ct. at 2067. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard. <u>Williams v. Taylor</u>, 529 U.S. 362, 391-93, 120 S. Ct. 1495, 1512-13 (2000), (citing <u>Lockhart v. Fretwell</u>, 113 S. Ct. 838, 506 U.S. 364 (1993)).

The Supreme Court has recently emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> In <u>Strickland</u> we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S., at 689, 104 S.Ct. 2052. Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a [petitioner] must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Ibid</u>. (quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).
>
> For [petitioner] to succeed, however, he must do more than show that he would have satisfied <u>Strickland's</u> test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly. <u>See Williams</u>, supra, at 411, 65 S. Ct. 363. Rather, he must show that the [ ]Court of Appeals applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.

<u>Bell v. Cone</u>, 535 U.S. 685, 698-699, 122 S. Ct. 1843, 1852 (2002).

\\\\\

\\\\\

\\\\\

\\\\\

\\\\\

8

II. Legal Standards

    A. **Ineffective Assistance of Counsel (IAC) in Failing to Contact Alibi Witnesses So as to Be Prepared for Trial Before Expiration of the Time Mandated by State Speedy Trial Law**

    It so happened that several persons were residing at the house visited by the victim in this case before he was stabbed.  Petitioner asserts in broad brush conclusion that these witnesses would have favored petitioner's defense.  Petitioner is not clear as to why these witnesses had to be discovered prior to the initial time at which trial would have been scheduled (March 2001); perhaps he believes that the prosecutor would not have been fully prepared.  However, such is only speculation on petitioner's part.  It could be that petitioner knew, but his attorney did not, just how itinerant petitioner's alibi witnesses would be, and that he expected these witnesses to leave town without a trace before the expiration of sixty days.  Petitioner does not describe why his attorney should have known these facts as well.

    In any event, this claim should also be denied for the reasons set forth in the opinion of the Superior Court.  There, like here, petitioner gave no inkling of how "John and Pam" would give him an alibi defense except to say that the victim/witness was not "present there" at the house where the stabbing took place (despite petitioner's concession elsewhere that the victim was there at least for a while).  He has attached no statements or declarations setting forth what these witnesses would say.  Evidently, petitioner has no way to locate these witnesses.  As such, any prejudice finding in this habeas action would be completely speculative.  Moreover, in the absence of any facts which would require this court to assess the validity of the alleged alibi, petitioner has failed to state a colorable claim and is not entitled to an evidentiary hearing.  See Schriro v. Landrigan, __U.S.__, 127 S. Ct. 1933 (2007).

\\\\\

\\\\\

\\\\\

### B. IAC for Failure to Tell Petitioner About a Failure to Appear Bench Warrant

Actually, petitioner means that his attorney failed to inform him about an appearance, and as a result of the non-appearance, petitioner was arrested on April 28, 2001 and remained in jail until July 3, 2001. However, petitioner does not link this alleged improper conduct on the part of his attorney to any event that affected the defense of the case. Surely, petitioner's allegations, if true, caused harm in the sense that jail is not a pleasant experience to say the least. However, this court reviewing petitioner's present conviction could do nothing in habeas corpus jurisdiction to mitigate or redress the harm suffered. Petitioner is not "in custody," and was not "in custody," for this alleged bail violation when he brought the instant federal habeas petition. Therefore, because the conviction and sentence did not stem from the alleged improper revocation of pretrial release, the court has no jurisdiction to review petitioner's complaint. See Reiner v. Remington, 217 Fed. Appx.681 (9th Cir. 2007).[2] Even if petitioner were considered to be "in custody" for purposes of habeas corpus, the matter is moot as no collateral consequences of any significance would stem from the temporary revocation of pre-trial release, and nothing the court could do now would be of any effect.

### C. IAC re Compliance with State Speedy Trial Laws

By reference to the petition, petitioner is unconcerned about any events related to the scheduling of trial prior to his arrest for non-appearance on April 28, 2001.[3] He states that trial was thereafter set on May 3, 2001(evidently his first appearance after arrest), and 60 days from that date was July 2, 2001 – and after several within-sixty day continuances, a date on

---

[2] Respondent posits that petitioner's release was part of a stipulation which also extended the trial date. Petitioner does not allege however that he was coerced into extending the trial date by virtue of entering into the stipulation.

[3] Petitioner was initially arraigned on January 9, 2001. He pled not guilty on January 11, 2001, and trial was initially set for March 22, 2001 with a TSC set for March 15, 2001. Petitioner did not appear for the TSC and a warrant was issued. CT 1. However, it appears from the Clerk's Transcript that petitioner was rearrested sometime before April 28.

which trial actually began. CT 4. However, on July 3, 2003, the prosecutor asked for a continuance, evidently based on the victim/witness' non-appearance, and this motion was granted. CT 4. Petitioner believes that he was entitled to trial on this "61st" day, and that his counsel was ineffective for not asking for dismissal. No claim of double jeopardy is made in this case.

Petitioner is mistaken on several grounds, and hence his attorney was not ineffective.[4] First, trial commenced on the 60th day. The fact that it was mistried, or otherwise continued on the second day, has no meaning under California's Speedy Trial statute, Cal. Penal Code § 1382.[5] Moreover, even if it did, a trial continued with the consent of the defendant must

---

[4] For IAC claims, an invocation of the Dixon bar (one cannot raise in habeas what one should have raised in direct appeal) is inappropriate as even the Superior Court expressly realized in its order. Generally, ineffective assistance claims are made outside the record and cannot be raised on direct appeals. Inexplicably, having recognized the Dixon exception, the Superior Court then went on to bar the IAC claims under Dixon. The undersigned will decide the IAC claims on their merits.

[5] The pertinent part of § 1382 is as follows:
(a) The court, unless good cause to the contrary is shown, shall order the action to be dismissed in the following cases:
(1) When a person has been held to answer for a public offense and an information is not filed against that person within 15 days.
(2) In a felony case, when a defendant is not brought to trial within 60 days of the defendant's arraignment on an indictment or information, or reinstatement of criminal proceedings pursuant to Chapter 6 (commencing with Section 1367) of Title 10 of Part 2, or, in case the cause is to be tried again following a mistrial, an order granting a new trial from which an appeal is not taken, or an appeal from the superior court, within 60 days after the mistrial has been declared, after entry of the order granting the new trial, or after the filing of the remittitur in the trial court, or after the issuance of a writ or order which, in effect, grants a new trial, within 60 days after notice of the writ or order is filed in the trial court and served upon the prosecuting attorney, or within 90 days after notice of the writ or order is filed in the trial court and served upon the prosecuting attorney in any case where the district attorney chooses to resubmit the case for a preliminary examination after an appeal or the issuance of a writ reversing a judgment of conviction upon a plea of guilty prior to a preliminary hearing. However, an action shall not be dismissed under this paragraph if either of the following circumstances exist:
(A) The defendant enters a general waiver of the 60-day trial requirement. A general waiver of the 60-day trial requirement entitles the superior court to set or continue a trial date without the sanction of dismissal should the case fail to proceed on the date set for trial. If the defendant, after proper notice to all parties, later withdraws his or her waiver in the superior court, the defendant shall be brought to trial within 60 days of the date of that withdrawal. If a general time waiver is not expressly entered, subparagraph (B) shall apply.
(B) The defendant requests or consents to the setting of a trial date beyond the 60-day period.

11

be scheduled within 60 days of the consent, but may be tried within a grace period of 10 days after the 60th day. Section 1382(a)(2)(B). Petitioner's insistence that his counsel should have moved for dismissal on the 61st day is not meritorious.

Also asserted as a ground for ineffectiveness is counsel's failure to object to the court's advisory statement to petitioner when the trial was sought to be continued from July 3 to September 10. As indicated by all parties, the trial court said that petitioner had a "tough right" to a jury trial within 60 days, and asked if petitioner desired to waive time. Although the quoted phrase is somewhat obscure in its meaning when viewing the black and white of the transcript, petitioner had no trouble catching the general meaning, and he affirmatively waived time without further inquiry. The undersigned does not recognize any cognizable claim in petitioner's complaint.

Petitioner next asserts, without specification, that his counsel gave "conflicting advice" about his right to a speedy trial. This type of meaningless *post hoc* claim cannot give rise to a viable ineffective assistance claim. Waiving time for trial is not a complicated concept, especially if one knows he will be released from custody if the trial is continued. Petitioner is grasping at straws.

Finally, petitioner claims that his counsel was ineffective when he failed to object to a short continuance request made by the prosecutor on September 10 and later in September as

---

Whenever a case is set for trial beyond the 60-day period by request or consent, expressed or implied, of the defendant without a general waiver, the defendant shall be brought to trial on the date set for trial or within 10 days thereafter.

Whenever a case is set for trial after a defendant enters either a general waiver as to the 60-day trial requirement or requests or consents, expressed or implied, to the setting of a trial date beyond the 60-day period pursuant to this paragraph, the court may not grant a motion of the defendant to vacate the date set for trial and to set an earlier trial date unless all parties are properly noticed and the court finds good cause for granting that motion.

(b) Whenever a defendant has been ordered to appear in superior court on a felony case set for trial or set for a hearing prior to trial after being held to answer, if the defendant fails to appear on that date and a bench warrant is issued, the defendant shall be brought to trial within 60 days after the defendant next appears in the superior court unless a trial date previously had been set which is beyond that 60-day period.

well, again ostensibly because the prosecutor was having further difficulty with the appearance of the victim/witness. The trial which resulted in petitioner's conviction commenced on October 4, 2001. A continuance of a trial otherwise mandated to begin by § 1382 may be continued for good cause shown, § 1382(a). Petitioner presents no factual basis upon which this court could determine that a defense counsel objection to the short continuance would have been sustained, i.e., the court would have found a lack of good cause to continue, and even if it did, the case would have been dismissed with prejudice. Certainly on this record, under AEDPA standards, the undersigned could not dispute the finding of the trial court concerning application of state law continuance standards.

### D. **Various Aspects of Violation of State Speedy Trial Laws**

Petitioner raises two other non-IAC issues within the context of his speedy trial complaints. First, he alleges that the trial court and counsel had preliminary, and likely off-the-record discussions about continuing the trial from July 3 to September 10. Also, he alleges, despite the record to the contrary, that he did not agree to the continuances. The Superior Court did bar these claims under In re Dixon, 41 Cal. 2d 756, 759 (1953) (one cannot raise in habeas corpus what one should have raised on direct review).

Petitioner did not raise these claims when he appealed; hence the Dixon bar. Under the burden shifting protocol of Bennet v. Mueller, 322 F.3d 573, 584-85 (9th Cir. 2003), petitioner had to at least oppose the imposition of the bar with specific assertions that the bar was not well established or regularly followed, or at the very least, simply oppose the bar. King v. La Marque, 464 F.3d 963, 966-68 (9th Cir. 2006). He has not even done the latter. Therefore, the bar should be applied.

### E. **Statement to the Effect That IAC Was Committed When Defense Counsel Told the Judge That Petitioner Knew the Victim**

Petitioner is mistaken as to who told what to whom. Petitioner's counsel made a motion-in-limine to exclude the "show-up" identification of petitioner by the victim witness.

Part of the motion was reviewed off the record, but in court the trial judge made a statement that "counsel" had made an offer of proof that petitioner and the victim knew each other. Petitioner interprets this exchange as *his* counsel told the judge that petitioner knew the victim.

Although petitioner contests that he knew petitioner at all (except that he does concede he met him on the day of the stabbing), the point is that the victim had stated all along that he knew petitioner by sight and his nickname prior to the stabbing day. As pointed out by respondent, since defense counsel had made a motion to exclude the victim's identification, it is more than likely that the judge was referring to the *prosecutor's* offer of proof to overcome the motion. Moreover, as pointed out by the Superior Court in the denial of the habeas motion, the victim and petitioner certainly "knew" each other on the stabbing day, and any identification could have been made on that basis alone.

Petitioner has not demonstrated that his counsel acted inappropriately.

F. **Reference to the Jury That Petitioner Was a "Three Time Loser"**

Petitioner took umbrage that his counsel related to the jury in final argument that petitioner was a "three time loser," i.e., had three felony convictions. RT 532. Counsel had previously brought out the conviction information on direct examination as well. RT 419. The Superior Court found that defense counsel's tactics were not subject to criticism in that defense counsel often "draw the sting" of their client's convictions in order to deprive the prosecution of inflicting yet greater damage on cross-examination if it were to appear that the defendant was attempting to hide such information. See, e.g. U.S. v. Martinez, 76 F.3d 1145, 1151 (10th Cir. 1996).

The Superior Court was correct, and its determination unassailable under AEDPA.

G. **Trial Counsel's Acquaintance with the Prosecutor's Investigator**

The prosecutor's investigator testified at trial. It so happened that defense counsel and the prosecutor had been classmates in high school. They had not seen each other since then, and exchanged some brief remarks during initial examination [not on cross-examination as the

Superior Court referenced]. RT 278-279. Thus, petitioner believes that his counsel had a conflict of interest in that he could not cross-examine this witness vigorously. However, this witness was called by the defense and examined on direct. Moreover, this rather mild encounter which petitioner believes is a conflict was not raised as a point on appeal. The Superior Court barred review of the claim under the <u>Dixon</u> rule (one cannot raise in state habeas corpus what should have been raised on appeal), and petitioner does not contest this ruling. Petitioner has failed to meet his burden. The claim is therefore procedurally barred.

The Superior Court also reached the merits in an alternative ruling.

> Regardless, petitioner fails to show that the investigator's recognition of defense counsel amounted to anything more than that, which does not give rise to any reasonable inference that the defense counsel and investigator had any sort of close relationship that interfered with defense counsel's ability to cross-examine the investigator....

There is a difference between a defense counsel's knowing a witness, and having a relationship with that witness, and simply having a slight acquaintance with the witness. See <u>United States v. Moore</u>, 159 F.3d 1154, 1157 (9th Cir. 1998). On the 1-10 scale of relationships, defense counsel's relationship with the prosecutor's investigator was about point-5. It could not be said that the Superior Court was objectively unreasonable in its determination.

H. **Conflict of Interest by Having Another Attorney Fill in for Trial Counsel When the Verdict Was Read**

As noted by the caption of this section, petitioner's trial counsel was called away while the jury was deliberating and was not present when the verdict was read. Aside from requesting to poll the jury, an attorney has little to do but listen to the verdict, and note any possible problems with its transmission, which generally do not require a knowledge of the case. In any event, petitioner has not set forth any problems with the rendering of the verdict.

The Superior Court again applied the <u>Dixon</u> bar, which again, petitioner has not contested. Also, a determination was again reached on the merits; however, the undersigned has some problem with the reasoning of the Superior Court. That court reasoned that because the

"Office of the Public Defender" was the attorney of record, the Office could send whatever attorney it wanted to represent petitioner. Clearly, for most all purposes, petitioner has a right to counsel who can give effective representation. In the real world, "offices" do not represent defendants – people do. It is unreasonable to assume that an attorney with no substantive knowledge of the case may be substituted in whenever convenient or necessary during the trial, and effective representation will still be afforded.

If petitioner's actual trial counsel had been absent during the evidence taking, with another attorney simply present, petitioner might well have a point. However, such is not the case. "Conflict of Interest" is not an appropriate denomination of this claim unless one could say that one was effectively without counsel because of the substitution. See Wright v. Van Patten, __U.S.__, 128 S. Ct. 743 (2008). Given the mostly ministerial nature of the appearance at verdict taking, the court cannot find that to be the case. Viewing petitioner's claim as one for potential conflict or ineffective assistance of counsel, no prejudice has been alleged, nor is any prejudice evident. The claim should be denied.

I. **IAC During Sentencing by Referencing Petitioner's "Insignificant Record on Parole"**

Petitioner's counsel put his thoughts on the record at sentencing, but those thoughts were not laudative of petitioner. The court had indicated its tentative view to impose the sentence recommended by probation, and counsel desired to place some statements on the record.[6]

> ...I had thought about asking for a 1204 hearing [Cal. Penal Code § 1204 mitigation of sentence hearing], but I, frankly, don't know how much good that would do. It probably would do no good at all, in my humble estimation. In talking with the probation officer...or I asked her if she was going to recommend time in double digits, as I put it to her, and she said no, and she recommended more than double digit time...

---

[6] The sentencing was somewhat unusual in that the defendant was not advised or invited to allocute. However, no such issue has been raised herein.

> Quite frankly, based upon my client's not insignificant record, to put it mildly here, I can understand the court not–not giving him low term in this case. As the court indicated in chambers, [7] it's probably either a midterm or high-term case, and I guess we should count our blessings for the probation officer not recommending the high term in this case, which I think could possibly be justified, quite frankly, by the – not necessarily just by this case, but by the combination of the circumstances of the case and his, as I indicated earlier, not insignificant record.
>
> So based on that, I just wanted to put my thoughts on the record. I'd submit.

RT 606.

In denying petitioner's habeas claim, the Superior Court found that counsel's statements were a "tactical decision." If they were, they were bad tactics. The trial court had already indicated its tentative mid-term sentence, which was ultimately imposed, and there was no legitimate reason for counsel to have thereafter emphasized his client's poor record, even to the point of telling the judge that a high term sentence could possibly be justified. Counsel's actions in simply putting his uninvited, adverse-to-his-client thoughts on the record were unreasonable, and the Superior Court's findings here of legitimate tactical reasons were unreasonable as well.

However, petitioner cannot possibly show prejudice in that the trial judge was not influenced by the comments to impose a higher sentence. And, any claim by petitioner that counsel could have successfully argued for a lighter, low term sentence would be sheer speculation, and based on the facts, not very likely. The claim should be denied.

*Conclusion*

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied in its entirety.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

---

[7] It seems that a bit of work in this case was done in chambers presumably outside the presence of the defendant. But again, no issue of this chambers meeting is raised by the petition.

17

1  days after being served with these findings and recommendations, any party may file written
2  objections with the court and serve a copy on all parties.  Such a document should be captioned
3  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
4  shall be served and filed within ten days after service of the objections.  The parties are advised
5  that failure to file objections within the specified time may waive the right to appeal the District
6  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

7  DATED: 05/15/08

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:gh:035
will1222.157